# Steinman *v.* Feldser, Appellant.

*Judgment—Testing validity of—Feigned issue—Equity — Bond
—Act of July 9, 1897, P. L. 237.*

Where a junior execution creditor instead of filing a bill in
equity to test the validity of a judgment and execution senior to
his own, files a petition showing on its face that he was attempting
to take advantage of the provisions of the Act of July 9, 1897, P. L.
237, and he fails to file a bond provided by the act, all proceedings
under the petition are nugatory and void.

Argued Nov. 14, 1916.  Appeal, No. 24, Oct. T., 1916,
by defendant, from judgment of C. P. Lancaster Co.,
Jan. T., 1912, No. 283, on verdict for plaintiff in case of
A. J. Steinman, Administrator of Susan S. Steinman,
Deceased, v. Lewis Feldser.  Before ORLADY, P. J.,
PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WIL-
LIAMS, JJ.  Reversed.

Feigned issue to determine the validity of a judgment.

From the record it appeared that the plaintiff was a
judgment and an execution creditor of one James L.
Wilson, junior to the defendant, who held an earlier
judgment on which he had issued an attachment, the
issue was granted and framed without the plaintiff hav-
ing filed a bond as prescribed by the Act of July 9, 1897,
P. L. 237.

Verdict and judgment for plaintiff.  Defendant ap-
pealed.

*Error assigned* was in assuming jurisdiction and
granting an issue without requiring the plaintiff to file
a bond.

*B. E. Davis,* for appellant.—The court below was with-
out jurisdiction: Page v. Williamsport Suspender Co.,
191 Pa. 511; Drove Yard Co.'s App., 123 Pa. 250;

58, (1917).] Arguments—Opinion of the Court.
Phelp's App., 98 Pa. 546; Meurer's App., 119 Pa. 115;
Keyer v. Cosmopolitan S. & L. Assn., 8 Dist. Rep. 708.

John E. Malone, with him J. Hale Steinman, for ap-
pellee.—The court had jurisdiction: Page v. Suspender
Co., 191 Pa. 518; Slingluff v. Sisler, 196 Pa. 121;
Sochers' App., 104 Pa. 609; Johnson v. Price, 172 Pa.
427; Wagner v. Fehr, 211 Pa. 435; Dinner v. Van
Dyke, 25 Pa. Superior Ct. 433; Hutchinson v. Dennis,
217 Pa. 290.

OPINION BY HEAD, J., July 13, 1917:

The judgment appealed from was entered on the ver-
dict of a jury rendered in the trial of a feigned issue.
The parties contesting were junior and senior judgment
creditors of one Wilson. The issue was framed on the
petition of the junior creditor. We shall briefly state the
important facts as we gather them from the record.

The judgment of the defendant appellant was entered
in the Court of Common Pleas of Lancaster County
March 19, 1912. It was in every way regular on its
face. It remained unchallenged from that date until
April, 1915. On the 20th of February, 1915, an attach-
ment execution was issued on this judgment in which
the Southern Mutual Insurance Company was made
garnishee. To the January Term, 1915, of the said
court Susan Steinman, the appellee's decedent, obtained
a judgment against Wilson and on March 11, 1915, an
attachment execution was issued on this judgment with
notice to the garnishee already named. On the 24th of
April, 1915, the junior creditor filed a petition in the
Court of Common Pleas reciting these facts and further
that petitioner "is informed, believes and expects to
prove that the judgment note given by Wilson to Feldser
is invalid and fraudulent and that the same was given
without consideration and with intention to hinder, de-
lay, embarrass and defraud creditors, and petitioner
expects to be able to establish these facts." The petition-

er prayed for "a rule to show cause why the validity and bona fides of the above-mentioned judgment should not be inquired into and an issue granted for that purpose." A responsive answer was filed denying the allegations of fact in the petition and declaring that the judgment attacked rested on a valuable consideration and was a valid and legal obligation. The court made the rule absolute and directed that an issue be framed to try "whether the note given by Wilson to Feldser on March 19, 1912, was given to defraud, delay and hinder the creditors or any of the creditors of Wilson and whether it was without consideration."

It seems to us plain enough that any application that could be made to interfere with the ordinary incidents of a judgment that had been on the record for three years would necessarily invoke the equitable powers of the court. Without the aid of equity, even the court in which the judgment had been entered would be powerless to interfere with it. Even where the defendant comes into court and asks to have a judgment opened in order that he may be permitted to defend against it, he appeals to the equity powers of the court. This has been so often declared, it would be useless to cite the authorities. But that is not the present case. The petitioner in this case was a stranger to the judgment in question and it is not competent for such stranger to ask to have a judgment opened. In Campbell v. Sloan, 62 Pa. 483, Mr. Justice SHARSWOOD said: "Under no circumstances could junior judgment creditors have any standing in court in their own names to open a judgment against their debtor and be let into a defense on the merits. They could attack it collaterally for fraud or for some matter arising subsequently to the entry of it as payment or a release, which would show that it was kept on foot in fraud of them, and that only by an issue to try the question."

We do not understand the principle thus declared has ever been departed from. Nor have we a case where a

bill in equity has been filed invoking the equitable power of a court to restrain the plaintiff in a judgment at law from the execution or enforcement of such judgment where such proceedings would work a fraudulent injury to the plaintiff in the bill. The language of the petition, of the rule and of the final order of the court awarding the issue, makes it plain there was an attempt to take advantage of the provisions of the Act of July 9, 1897, P. L. 237. The statute on its face was evidently intended to provide the procedure by which a party, situate precisely as the petitioner in this case was, might invoke the equitable power of the court to relieve against a judgment alleged to have been fraudulent and given to hinder, delay and embarrass creditors. Had the statute been complied with, the junior creditor could have properly proceeded to try out the issues of fact tendered in his petition. But the statute declares "That before the court shall grant such rule to show cause, the applicant therefor shall give a bond, with sufficient surety to be approved by the court, in such amount as the court shall direct, conditioned that all costs incurred in such proceedings and damages sustained by the plaintiff in such judgment by reason thereof, shall be paid if the rule be discharged or the proceedings dismissed."

In Page v. Williamsport Suspender Company, 191 Pa. 511, the Supreme Court, after declaring the act to be constitutional, said: "The act is mandatory that the bond shall be filed before the rule is granted, and the proceedings, therefore, were irregular and should have been quashed, if the objection had been made in time." The learned court below therefore was right in holding the proceeding could not be sustained under the Act of 1897. But we think he fell into error when he assumed, that because prior to that statute the courts were invested with equitable jurisdiction to prevent the execution of fraudulent judgments, the statute could be ignored and the plaintiff could invoke the equitable powers of the court without conforming with the procedure which the stat-

ute declared should be followed in cases of that kind. It
is not necessary to hold that the statute afforded a new
remedy which was either concurrent with or exclusive of
the remedy that existed before. As we view it, it was a
perfectly competent legislative act, the purpose of which
was to define the procedure to be followed by a plaintiff
who sought the equitable relief that, under prescribed
circumstances, a court of equity could give. The legis-
lature had the same right to say that in such an appli-
cation to the court a plaintiff must give security as to
say that in an application for an injunction a bond must
be filed. We are not to be understood as saying or in-
tending to say that the equity power of a court, to deal
with a judgment at law obtained by collusion or fraud,
is now other than or different from what it was before
the passage of the Act of 1897, supra. We do not hold
that such judgment may not be attacked collaterally
in any of the several recognized ways in which such an
assault may be properly and successfully made. For as
long ago as Gallup v. Reynolds, 8 Watts 425, Chief Jus-
tice GIBSON said: "Our practice therefore is to try col-
lusion by a collateral issue, but matter of defense by an
issue in the cause." This statement, of the ancient prac-
tice of the courts of Pennsylvania, was cited with ap-
proval by Chief Justice WOODWARD, in Cochran v. Eld-
ridge, 49 Pa. 365.

What we hold and all we decide is this. By the Act of
1897 the legislature has declared that when a certain
kind of intervention by a court of equity is sought; when
the court is asked to award a particular issue defined in
the statute; the procedure prescribed by the act must
be followed. It has been declared by the highest au-
thority the legislature did not overstep any constitu-
tional limitation in enacting the law. It must be obeyed
therefore in letter and spirit. To permit a particular
petitioner to secure the exact relief described in the act
without complying with its mandatory provisions, would

come perilously near ignoring or nullifying the clearly expressed legislative will.

We are of opinion therefore the learned court below should have refused the rule on which the entire proceeding rested. This being true, all that followed was nugatory.

The judgment is reversed.