Huron Leather Co., Ltd. *v.* Sklar et al., Appellant.

Submitted March 12, 1931.

Before Trexler, P. J., Keller, Linn, Gaw-

THROP, CUNNINGHAM, BALDRIGE and DREW, JJ.

*Maxwell Pestcoe,* for appellants.

*Lester Bowman,* for appellee.

OPINION BY DREW, J., May 5, 1931:

Plaintiff, a Canadian corporation, instituted an action of replevin in the court below for the recovery of a certain shipment of leather of the alleged value of $1,000. A bond in the amount of $2,000 was filed, as required by Section 1 of the Replevin Act of April 19, 1901, P. L. 88, signed by plaintiff corporation by Lester Bowman, its attorney, who signed as attorney-in-fact, and by a surety company. The commonly accepted abbreviation of a seal—"(L. S.)"—appeared following the signature of plaintiff corporation, but the corporate seal of plaintiff was not attached. There appears on the bond the word "telegram," which refers to a telegram delivered by Bowman to the prothonotary at the time the bond was filed, which reads as follows: N. Y. 1/12/31. 11:45 A. M. Lester Bowman, You are hereby authorized to act as attorney-in-fact for the Huron Leather Co., Ltd., in the execution of replevin bonds against whomever it may have occasion to issue them and that this telegram will be followed up with a power of attorney from our home

office signed by the regular officers confirming said authority. Huron Leather Co., Ltd.'' Defendant filed a petition upon which a rule was granted on plaintiff to show cause why the writ of replevin should not be quashed on the ground that the bond was not executed under proper authority of plaintiff, and was therefore invalid. The answer set up authority given plaintiff's attorney-in-fact by said telegram. At the oral argument the court gave leave to plaintiff to file a formal power of attorney (which it later did) ratifying the act of its attorney-in-fact in executing the bond. The court then discharged the rule to quash and from its order in doing so defendant appeals.

The Replevin Act, Section 1, provides as follows: ''That before any writ of replevin shall issue out of any court of this Commonwealth, the person applying for said writ shall execute and file with the prothonotary of the said court a bond to the Commonwealth of Pennsylvania, for the use of the parties interested, with security in double the value of the goods sought to be replevied, conditioned, etc., ......''

This section of the act makes it clear that the filing of the bond by plaintiff is a condition precedent to the issuance of the writ. In Page v. Williamsport Suspender Co., 191 Pa. 511, it was held that where a petitioning creditor, under the Fraudulent Debtors' Act of July 9, 1897, P. L. 237, had been permitted to intervene but filed no bond, neither the court of common pleas nor the Supreme Court had any jurisdiction as to him inasmuch as the act is mandatory that a bond be filed. (To the same effect see Steinman v. Feldser, 67 Pa. Superior Ct. 58.) There can be no question that before the writ issues in an action of replevin, a validly executed, self-sustaining, and completed bond must be filed. If this is not done before the service of the writ of replevin, the plaintiff cannot, by curing the defect in an invalid bond, after service

of the writ, validate such service; yet that is what was attempted in this case. The subsequent filing of the power of attorney could not give life to the bond. If such were possible, it would nullify Section 1 of the Act, which specifically says that "before any writ of replevin shall issue," the bond shall be executed and filed.

Where, as here, the plaintiff is a corporation, it must of necessity perform this duty through an agent. But appellant contends that the authority of plaintiff's agent in this case, to execute the bond, was not properly shown, because there was nothing to indicate who acted for the corporation in signing its name to the telegram purporting to authorize its attorney-in-fact to execute the bond in its name. We think this is true. There is no presumption that the person who sent the telegram or the attorney who signed the bond, had authority to bind the corporation. The instrument shows, on its face, such an absence of authority as to make the bond invalid. It is nothing better than an informally executed paper: Hamborsky v. Magyar Presbyterian Church, 78 Pa. Superior Ct. 519.

But there is another reason why this bond is invalid. It did not bear the corporate seal. A seal is of the essence of a bond, and no writing can have the qualities which attach to a bond without the seal of the parties executing it: 9 Corpus Juris, Sec. 19, page 14; Taylor v. Glaser, 2 S. & R. 501.

In Moritz's Contested Election, 256 Pa. 537, a case arising under the Act of April 28, 1899, P. L. 118 which provides for the trial of contested elections, the Supreme Court, at pages 541-542, says: "We must assume that the legislature in prescribing a bond as a condition in such proceedings had in mind those characteristics which distinguish bonds from other acknowledgments of indebtedness or liability, as well the separate legal incidents which attached to each. A

bond is a deed, and what makes it a deed is. the fact that it is sealed by the obligor. Except as sealed it is not a bond. In this State we have never abated one jot in our strict observance of this distinction. 'Sealing and delivering,' says TILGHMAN, C. J., in Taylor v. Glaser, 2 S. & R. 502—a case tried more than one hundred years ago—'is still the criterion of a specialty; and it is important that the distinction between specialties and writings not specialties should be preserved in the courts. If it should be thought that in the present state of society it would be best to put all writings on the same footing, the legislature alone has the power to accomplish it.' . . . . . . There has been no departure from the law as here declared; the only relaxation, as said by TILGHMAN, C. J., in the opinion filed in the above case, was in the manner of making the seal. There has been slight, if any, further relaxation from that date to this. The only question therefore in the case must be whether the legislature had in mind this clear distinction between sealed and unsealed obligations when it passed the governing act. That it had, we have a right to assume; and even were it otherwise, the question is too plain to call for discussion.''

The initials "L. S." used to denote a seal would be sufficient if plaintiff were an individual, but cannot be used to take the place of a corporate seal. A corporation is an imaginary being whose deeds are authenticated by its common seal, which must be proved: Leazure v. Hillegas, 7 S. & R. 313.

The appellee contends that, under Section 8 of the Replevin Act, the court had the power to permit the filing of the power of attorney ratifying the act of the attorney-in-fact in executing the bond in the first instance. The section provides in part, " . . . . . . The court may, upon motion, increase the amount of bail required; may require new bail, if for any reason the

old bail has become insufficient, ...... or may permit the substitution of bail for that already given, ......"
We are of the opinion that the court does not have discretion, under the phrase "substitution of bail for that already given," to substitute a valid bond for an invalid one. We believe this phrase was intended to cover a case where the bond, valid when given has for some reason become insufficient or doubtful, in which case the court may, and in fact should, permit substitution of a new and valid bond for the original.

Plaintiff corporation was under a duty to file its bond and it failed to discharge that duty when it entered a bond not bearing its corporate seal and not executed by an agent properly authorized.

The order is reversed and the writ quashed.